**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ALBERTO ROMERO, ISRAEL PINA, MIGUEL FLORES, and ISRAEL BELLO, and JESUS AGUILAR, on behalf of themselves and other similarly situated persons, known and unknown,<br><br>                    Plaintiffs,<br><br>v.<br><br>ACTIVE ROOFING COMPANY, INC., and JOSEPH CAROLAN<br><br>                    Defendant. | No. 1:15-CV- 01347<br><br>Magistrate: Hon. Susan Cox |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' SETTLEMENT AGREEMENT AND FOR APPROVAL OF CLASS CERTIFICATION, FORM AND MANNER OF CLASS NOTICE, AND SCHEDULING FAIRNESS HEARING FOR FINAL APPROVAL OF SETTLEMENT**

Plaintiffs Alberto Romero, Israel Pina, Miguel Flores, Israel Bello and Jesus Aguilar ("Plaintiffs"), on behalf of themselves and all others similarly situated, move this Court for an order preliminarily approving the Parties' Class Action Settlement Agreement (attached hereto as Attachment 1 (hereinafter, the "Settlement Agreement") and an order approving class certification for settlement purposes, the form and manner of class notice, and scheduling a Fairness Hearing for final approval of settlement. In further support of this Unopposed Motion, the Plaintiffs state as follows:

## I.      BACKGROUND

### A.      SUMMARY OF THE COMPLAINT

On February 12, 2015, a class action lawsuit was filed in the U.S. District Court for the Northern District of Illinois. The case is presently titled *Romero et al. v. Active Roofing Company, Inc., et al.* Case No. 15 C 1347.

Plaintiffs asserted two Class claims, or Counts, against Defendants, Active Roofing Company Inc., and Jospeh Carolan, individually (hereinafter "Active" or "Defendants"), in this Litigation.

Count I of the Complaint asserts collective action claims for violations of the Fair Labor Standards Act 29 U.S.C. § 201, *et seq.* ("FLSA") based on the Defendants' alleged failure to pay federally overtime wages. Count II of the Complaint asserts class-wide violations of the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* ("IMWL") based on Defendants' alleged failure to pay Illinois mandated overtime wages.

Defendants dispute that Plaintiffs and the Members of the Class are owed any wages and have denied any and all violations of the law asserted by Plaintiffs.

### B.      SUMMARY OF THE SETTLEMENT TERMS

As set forth more fully herein Class Counsel conducted extensive formal and informal discovery and reviewed thousands of documents produced by Defendants relating to work performed by the Named Plaintiffs and putative Class Members for Defendants. These records included payroll records for Plaintiffs and a significant sample of Class Members, time records, foreman logs, Illinois Tollway Records, Estimates, and Contracts.  As Class Counsel reviewed these documents, the Parties engaged in extensive arms-length settlement negotiations, including an all day settlement conference supervised by this Court, which culminated in the Settlement Agreement attached hereto as Exhibit A. The Parties believe they are and were fully and

2

adequately informed of all facts necessary to evaluate the case for settlement. Defendants continues to deny any wrongdoing in the matter, but they evaluated the risk inherent in proceeding to trial and the costs of extended litigation and determined the settlement reached was an appropriate compromise in order to buy peace. The named Plaintiffs and their counsel likewise believe the settlement reached in this matter is a good outcome for Plaintiffs and the putative class. The material terms of the settlement are as follows, subject to approval by the Court:

1. **Class Definition**: The class of 110 individuals allegedly owed unpaid wages is to be defined as, for settlement purposes:

   > The Class Representatives and all roofers and laborers employed by Defendants on an hourly basis for the period from February 12, 2012, to July 1, 2016 (the "Class"). The class will be composed of the 110 individuals reflected in Exhibit A in Attachment 1 thereto.

2. **Settlement Fund**: Defendants shall make a total Settlement Payment of Four Hundred Forty Five Thousand Dollars and No Cents($445,000.00) into a Qualified Settlement Fund. Half of this Settlement Amount will be deposited by Defendants via wire transfer no later than seven (7) days after Preliminary Approval is granted by this Court. The remaining 50% of the Settlement Amount will be deposited no later than seven (7) days prior the Final Approval Hearing in this matter. The settlement fund will be apportioned as follows:

   a. Payment of all timely claims submitted by Claimants, determined using the formulae set forth below which is explained below;

   b. Payment of costs associated with the Qualified Settlement Fund[1];

   c. Payment to each named Plaintiff in the amount of One Thousand Five Hundred Dollars and No Cents ($1,000.00) as an enhancement award for their service to the class, as approved by the Court;

   d. Payment to each named Plaintiff in the amount of Four Thousand Dollars and No Cents $4,000.00 in consideration for Named Plaintiffs executing of a general release of all claims against Defendants; and

---

[1] Plaintiffs' counsel has received a quote from Settlement Services, Inc., who will act as the settlement administrator in this matter estimating a total claims administration cost of approximately $11,800.

e. Payment of attorneys' fees and costs in the amount of up to One Hundred and Two Thousand Dollars and No Cents ($102,350.00), or the equivalent of approximately twenty-three percent (23%) of the Settlement Fund, as approved by the Court.

3. **Notice to Class Members:** Notice of the Class Action Settlement and Claim and Release Forms with instructions to participate in the settlement and to be excluded or object to the settlement shall be mailed via first class mail through the U.S. Postal Service, postage pre-paid. *See* Claim and Release Form, attached as Exhibit B to Attachment 1 to this Motion; *See also* Notice of the Class Action Settlement, attached as Exhibit C to Attachment 1 to this Motion.

4. **Individual Settlement Payments to the Class**: Class Members who submit a valid claim form ("Claimants") will receive a share of the Class Settlement Amount based on the following formula:

a) Hours worked between February 2, 2012 and June 3, 2016 * $14.66 (average estimate owed overtime wages and liquidated damages per hour of worked);

b) The Parties agree that 50% of each Claimant's Settlement Payment will be considered wages and will be reported as such on an IRS Form W-2 and that the remaining 50% of each Claimant's Settlement Payment will be considered alleged liquidated damages under the Fair Labor Standards Act and will be reported as such on an IRS Form 1099 where mandated by the Internal Revenue Service. Appropriate withholding of federal, state, and local income taxes, and the Claimants' share of Federal Insurance Contributions Act (FICA) taxes shall be deducted from the respective Settlement Payments and reported in the above referenced Form W-2. Other than the withholding and reporting requirements herein, Claimants shall be solely responsible for the reporting and payment of their share of any federal, state, and/or local income or other taxes on payments received pursuant to this Settlement.

c) In the event that the sum of Settlement Payments to Claimants, Administration Costs, attorneys' fees awards by the Court, and General Release Payments and Service Payments does not exceed the settlement amount any remaining funds shall be redistributed between Claimants on an pro rata basis.

4. **Un-negotiated checks:** un-negotiated checks will become void and will become part of the Remainder Fund. Half of the Remainder Fund will be donated to the Raise the Floor

Alliance.[2] The remaining Half of the Remainder Fund will be donated to the Easterseals-Chicago and the Starlight Children's Foundation in equal 25% shares.[3]

## II.   STANDARD FOR PRELIMINARY APPROVAL

The settlement or compromise of a class action requires this Court's approval. Fed.R.Civ.P. 23(e). The law encourages settlement of class actions, and a voluntary settlement is the preferred method of class action resolution. *Redman v. Radioshack Corp*., No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880, at *9 (N.D. Ill. 2014) (*citing Isby, et al. v. Bayh, et al*., 75 F.3d 1191, 1196 (7th Cir. 1996)).

In ruling on a motion for preliminary approval of a class action settlement, the district court must determine whether the proposed settlement is within a "range of reasonableness," such that sending notice to the class is warranted. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("in assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation") (internal citations omitted). If the proposed agreement presents no apparent defects or other indicia of unfairness, then the court should direct that notice of a fairness hearing

[2] Raise the Floor Alliance (RTF) is a Chicago based non-profit whose mission is to ensure that low-wage workers have access to quality jobs and are empowered to uphold and improve workplace standards. RTF achieves its mission by providing research, communications and legal support for efforts to win public and private policy changes that raise the floor for all workers. In addition to RTF's advocacy work in the legislative and regulatory arenas RTF also provides free and direct legal assistance to low wage workers in the greater Chicago area and surrounding suburbs in the area of employment law.

[3] The Easter Seals provides exceptional services to ensure that all people with disabilities or other special needs and their families have equal opportunities to live, learn, work and play in their communities.

Easterseals in Chicago specifically provides early intervention and services for families with infants and toddlers who have delays in development or are at risk of development delay as well as collaborating with Head Start programs and Child Development centers. They also provide teen, young adult, and older adult services including in-home services for people with developmental disabilities such as Alzheimer's disease, MS, or stroke..

The Starlight Children's Foundation partners with experts to improve quality of life for children, families and communities around the world. Starlight Children's Foundation funds critical needs expressed by more than 600 community partners including hospitals, specialty clinics and camps, respite houses and hospices in the United States and Puerto Rico.

be given to the Class Members, where evidence and argument may be presented for and against the proposed settlement. *Staton v. Boeing Co., Inc*., 327 F.3d 938 (9th Cir. 2003).

## III. CERTIFICATION OF CLASS IS APPROPRIATE

A district court has broad discretion in determining whether the parties have made a showing that class certification is appropriate. *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir. 1998). In evaluating the fairness, reasonableness, and adequacy of the settlement, the Court should view the facts in a light most favorable to the settlement. *Isby*, 75 F.3d at 1199. The Court should not substitute its own judgment as to the best outcomes for litigants and their counsel. *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 315 (7th Cir. 1980). The Court's role is to determine whether Plaintiffs are asserting a claim which, assuming its merits, would satisfy the requirements of Rule 23. See H. Newberg on Class Actions, §24.13 at 60 (3d ed. 1992)(hereafter "Newberg"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171 (1974).

### A. Plaintiffs' Class Claims Should be Certified For Settlement Purposes

Rule 23 requires a two-step analysis to determine whether class certification is appropriate. A plaintiff must satisfy the requirements of Fed. R. Civ. P. 23(a) and fall within at least one of the categories identified in Rule 23(b). *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)(citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982). First, the action must satisfy all four requirements of Rule 23(a). That is, "the plaintiff must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Id*.

Second, the action must satisfy one of the conditions of Rule 23(b). *Id*. Rule 23(b) is satisfied on a showing of one of three circumstances: (1) separate lawsuits would create the risk of inconsistent judgments or would be dispositive of the interests of nonparty Class Members; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with

respect to the class as a whole; or (3) questions of law or fact common to the class predominate over questions affecting individual members, and the class action is superior to other available methods. Fed. R. Civ. P. 23(b)(1) – (3).

Plaintiffs' claims meet the requirements for class treatment of this Lawsuit.[4]

### 1. Certification Under Rule 23(a)

#### a. Numerosity -- Rule 23(a)(1)

The class is so numerous that joinder of all members is impracticable. When analyzing whether joinder is impracticable, factors such as judicial economy, geographic diversity of Class Members, and the ability of Class Members to institute individual lawsuits should also be considered. *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996). To determine whether joinder is impracticable courts must consider the circumstances unique to each case. *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1966). "To require a multiplicity of suits by similarly situated small claimants would run counter to one of the prime purposes of a class action." *Id.* at 1333. In this case, the Parties have established that the class is composed of 110 individuals. The size of this putative class easily satisfies Rule 23(a)(1).

#### b. Commonality -- Rule 23(a)(2)

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). "[C]ommonality requires the plaintiffs to demonstrate that the class members have suffered the same injury." *Jamie S. v. Milwaukee Pub. Schs*, 668 F.3d 481, 484 (7th Cir. 2012). (internal quotation marks omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.

---

[4] Defendants believe that class certification is warranted for settlement purposes only, and reserves all defenses to class certification in the event that the settlement class is not certified. To the extent that Plaintiffs' arguments are not specifically limited to "for settlement purposes only," Defendants do not join in them and specifically reserve its rights to argue that class certification is not appropriate should the Settlement not be Finally Approved, or should it become void for any other reason.

2541, 2551 (2011). In order to satisfy this requirement, there needs to be just one common question of law or fact but that common question cannot be just a superficial similarity. *Dukes*, 131 S. Ct. at 2556; *Jamie S.*, 668 F.3d at 497. Not only must the class claims "depend on a common contention," that common contention "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551; *Jamie* S., 668 F.3d at 497.

Here, Plaintiffs' claims are based on questions of fact and law common to the class. Each Class Member was allegedly employed by Defendants and subject to Defendants' alleged compensation practices and policies during the Class period, including, the alleged practice by Defendants of not compensating Plaintiffs and the Class for pre and Post-shift work and travel time, resulting in alleged violations of the overtime requirements of the FLSA and IMWL.

The common questions are: whether Defendants failed to pay Plaintiffs and the Class for all compensable time and whether Defendants' alleged failure to compensate Plaintiffs and the Class for all compensable time resulted a failure to compensate Plaintiffs and the Class for all time worked in excess of forty hours during individual work weeks in violation of the FLSA and IMWL. The resolution of these questions will resolve the matter for the entire class.

### c.    Typicality -- Rule 23(a)(3)

The question of typicality is closely related to the preceding question of commonality. The Seventh Circuit has held that a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). To meet the typicality requirement, there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the

8

named party to litigate on behalf of the group. *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). Plaintiffs alleged Defendants failed to pay Plaintiffs for all compensable time, specifically pre and post-shift work and travel time, and said nonpayment resulted in a failure to compensate Plaintiffs and the Class for all time worked in excess of forty hours per week at their overtime rate. The claims of Plaintiffs and Class Members arise from the same alleged conduct of Defendants.

### d.    Adequacy of Representation -- Rule 23(a)(4)

Rule 23(a)(4) requires the named class representative "will fairly and adequately protect the interests of the class." "The adequacy of representation requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the named representative must have a "sufficient interest in the outcome to ensure vigorous advocacy; and, (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Lau v. Arrow Fin. Servs., LLC*, 2007 U.S. Dist. LEXIS 40066, 17 (N.D. Ill. 2007)(citing *Sledge v. Sands,* 182 F.R.D. 255, 259 (N.D. Ill. 1998); *Gammon v. GC Servs. Ltd. P'ship.,* 162 F.R.D. 313, 317 (N.D. Ill. 1995)). The burden of demonstrating that the class representative is adequate is not heavy" *Sledge,* 182 F.R.D. at 259.

Plaintiffs satisfy this standard here. Plaintiffs do not have antagonistic or conflicting claims with other members of the class. Plaintiffs and the class were all employed by Defendants in the State of Illinois and all seek unpaid wages pursuant to the FLSA and the IMWL. Plaintiffs also have a sufficient interest in the outcome to ensure vigorous advocacy. Adequacy requires the Named Plaintiffs to be conscientious and to "understand the basic facts underlying his claims." *Id*. Plaintiffs here understand the general foundation of the case. Each participated in the Parties' formal and informal discovery process, and assisted Class Counsel in reviewing and

analyzing documents produced by Defendants over the course of numerous in person meetings and phone calls. Furthermore Named Plaintiffs attended the settlement conference supervised by this Court and were active in negotiations to explore resolution of this matter. This qualifies the Named Plaintiffs as "conscientious representative plaintiffs" and satisfies this element. *Robles v. Corporate Receivables, Inc*., 220 F.R.D. 306, 314 (N.D. Ill. 2004).

As explained, *infra*, Section V(C), the Named Plaintiffs' attorneys are qualified and able to conduct the proposed litigation vigorously.

### B.     This Action Satisfies the Requirements of Rule 23(b)

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one of the subdivisions of Rule 23(b). Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiffs seek certification under Rule 23(b)(3). *See Allen v. International Truck and Engine Corp*., 358 F.2d 469, 472 (7th Cir. 2004).

Rule 23(b)(3) allows an action to be maintained as a class action if the court finds that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual class members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining "superiority", the court should look to non-exhaustive factors: the interest of class members in individually controlling separate actions, any litigation concerning the controversy already commenced, the desirability or undesirability of concentrating the litigation, and the manageability of the class action. *Id*. The Seventh Circuit has concluded that classes seeking substantial damages may be certified under Rule 23(b)(3). *Jefferson v. Ingersoll*

*International Inc.*, 195 F.3d 894, 898 (7th Cir. 1999). The courts have certified similar class claims seeking unpaid wages and statutory penalties under Rule 23(b)(3). *See De Leon-Granados v. Eller and Sons Trees, Inc.*, 497 F.3d 1214 (11th Cir. 2007) (claim for unpaid wages under the Migrant and Seasonal Agricultural Worker Protection Act (AWPA)); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 612-14 (C.D. Cal. 2005) (claim, *inter alia*, for unpaid wages and itemized payroll statements under California law).

The common questions of law and fact in this case predominate over any individual issues. The dominant legal issue is whether Defendant's compensation policies violated the FLSA 29 U.S.C. §201 *et seq*., the IMWL 820 ILCS 105/1, *et seq*. The predominance requirement is also satisfied where a "common nucleus of operative fact," for which the law provides a remedy, exists among all class members. *Chandler v. Southwest Jeep-Eagle, Inc*., 162 F.R.D. 302, 310 (N.D. Ill. 1995). In this case, there is a common nucleus of operative fact that concerns Defendant's compensation policies.

Further, a class action is superior to other methods of adjudication in this case. Judicial economy and efficiency, as well as consistency of judgments would be achieved through the certification of the class. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill 1992). The alternative is potentially *dozens* of individual lawsuits and piecemeal litigation.

### C.    Plaintiffs' Counsel Should be Appointed Class Counsel

Rule 23(g) requires that courts consider the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims, (2) class counsel's experience in handling complex litigation and class actions, (3) counsel's knowledge of the applicable law, and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g). In this case, all these requirements are met. Plaintiffs' attorneys have extensive experience and expertise in complex employment litigation and class action

proceedings, and are qualified and able to conduct this litigation. Plaintiffs' counsel, Christopher J. Williams and Alvar Ayala, have been lead counsel or co-counsel in over 300 wage and hour cases filed in the Circuit Court of Cook County and the Northern District of Illinois. The majority of these cases set forth class claims under the FLSA, the IMWL, the IWPCA, the IDTLSA and the ECA and proceeded as Rule 23 class actions and/or collective actions under §216(b) of the FLSA.[5]

## IV.    THE PARTIES' PROPOSED SETTLEMENT

After substantial formal and informal discovery, followed by extensive negotiations, including numerous in-person and telephonic meetings between counsel and between Counsel

---

[5] Plaintiffs' Counsel have regularly been designated as class counsel in class action employment litigation including: *Gutierrez v. Addison Hotels, LLC* Case No. 15 C 2021 (N.D. Ill.) (D.E. 44) (Final Approval 5/9/16); *McDowell et al. v. Accurate Personnel, LLC* Case No. 14 C 8211 (N.D. Ill.) (D.E. 68) (Preliminary Approval 5/4/16); *Hoffman et al. v. RoadLink Workforce Solutions, LLC et al.,* Case No. 12 C 7323 (N.D. Ill.) (D.E. 154) (Final Approval 1/29/16); *Mayfield et al. v. Versant Supply Chain, Inc. et al.,* Case No. 14 C 7024 (N.D. Ill.) (D.E. 61) (Final Approval 12/15/1); *Ramirez v. Staffing Network et al.,* Case No. 13 C 6501 (N.D. Ill.) (D.E. 142)(Final Approval 7/24/15); *Martinez et al. v. Staffing Network et al.,* Case No. 13 C 1381 (N.D. Ill.) (D.E. 143) (Final Approval 6/30/15); *Alvarado et al. v. Aerotek,* Case No. 13 C 6843 (Final Approval 1/29/2015); *Dickerson v. Rogers' Premier Enterprises, LLC* Case No.13 C 7154 (Final Approval 01/07/15); *Hernandez v. ASG Staffing, Inc.,* Case No. 12-2068 (Final Approval 12/11/14); *Blancas et al. v. Cairo and Sons Roofing, Co. Inc.,* Case 12 C 2636 (Final Approval 12/12/2013); *Dean et al. v. Eclipse Advantage Inc., et al* Case 11 C 8285 (Final Approval 12/17/2013); *Gallegos et al v. Midway Building Services, LTD et al.,* Case No. 12 C 4032 (Final Approval 10/02/2013); *Craig v. EmployBridge et al.,* Case No. 11 C 3818 (Final Approval 04/04/13); *Smith et al. v. Dollar Tree Distribution, Inc.,* Case No. 12 C 3240 (Final Approval 2/27/13); *Ramirez et al. v. Paramount Staffing of Chicago, Inc.,* Case No. 11 C 4163 (Final Approval 1/29/13); *Bautista et al v. Real Time Staffing, Inc.,* Case No. 10 C 0644 (Final Approval 09/06/12); *Ochoa et al v. Fresh Farms International Market, Inc. et al.,* Case No.11 C 2229 (Final Approval 07/12/12); *Jones et al v. Simos Insourcing Solutions, Inc.,* Case No. 11 C 3331 (Final Approval 05/04/12); *Francisco et al v. Remedial Environmental Manpower, Inc. et al.,* Case No. 11 C 2162, (Final Approval 04/25/12); *Alvarez et al v. Staffing Partners, Inc. et al.,* Case No. 10 C 6083 (Final Approval 01/17/12); *Craig et al v. Staffing Solutions Southeast, Inc.,* Case No. 11 C 3818 (Final Approval 06/06/11); *Andrade et al v. Ideal Staffing Solutions, Inc. et al.,* Case No. 08 C 4912 (Final Approval 03/29/10); *Arrez et al v. Kelly Services, Inc.,* Case No. 07 C 1289 (Final Approval 10/08/09); *Acosta et al v. Scott Labor LLC et al.,* Case No. 05 C 2518 (Final Approval 03/10/08); *Ortegón et al v. Staffing Network Holdings, LLC et al.,* Case No. 06 C 4053 (Final Approval 03/13/07); *Garcia et al v. Ron's Temporary Help Services, Inc. et al.,* Case No. 06 C 5066 (Final Approval 04/03/07); *Camacho et al v. Metrostaff, Inc. et al.,* Case No. 05 C 2682 (Final Approval 05/17/06).

and their clients, and investigation by the Parties and their Counsel, the Parties have reached an agreement to settle Plaintiffs' claims on a class-wide basis. A summary of the settlement terms are outlined below.

**A.     The Settlement Class Definition and Settlement Period**

As part of the Settlement, the Class is defined as:

> The Class Representatives and all roofers and laborers employed by Defendants on an hourly basis for the period from February 12, 2012, to July 1, 2016 (the "Class"). The class will be composed of the 110 individuals reflected in Exhibit A in Attachment 1 thereto

**B.     The Settlement Amount**

*See* **Part I.B.,** *supra*

**C.     Release and Bar of Claims**

All Class Members who have not excluded themselves from the Settlement by filing timely "opt out" notices with the claims administrator shall be deemed to have relinquished all claims for unpaid minimum and overtime wages under the FLSA and IMWL as set forth in Section XII of the Settlement Agreement, and to have released Defendants and the other released parties from any and all liability arising out of those claims. Upon granting final approval of the Settlement, the Court shall dismiss this matter *with prejudice*, retaining jurisdiction solely for the purpose of interpreting, implementing, and enforcing the Settlement Agreement consistent with its terms.

**D.     Named Plaintiffs' and FLSA Section 216(b) Opt-in Plaintiffs' Payments**

In addition, as part of the Agreement, Defendants will pay Four Thousand Dollars and No Cents ($4,000.00) in consideration for each Named Plaintiff's general release of claims against Defendants (a combined total of Ten Thousand Dollars [$20,000.00]) and One Thousand Five Hundred Dollars and No Cents ($1,500.00) as an enhancement award for Named Plaintiffs'

service to the Class (a combined

Total of Five Thousand [$7,500.00]).

Additionally, FLSA section 216(b) Opt-In Class Members Ismael Reyes, Enrique Pina, Adrian Pichardo, Raul Nava, and Fernando Gamez will receive a payment of One Thousand Dollars and No Cents ($1,000.00). These Class Members tolled the running of the statute of limitations period on their FLSA claims well before other Class Members by filing consents to be represented by Named Plaintiffs in this matter. These payments of $1,000.00 per Opt-in Class Members constitute consideration for these individuals' release of their right to liquidated damages under the FLSA.

### E.    Attorneys' Fees

Finally, pursuant to the Settlement, up to twenty-three percent (23%) of the Settlement Amount, or One Hundred and Two Thousand Three Hundred and Fifty Dollars and No Cents ($102,350.00), as approved by the Court, will be paid to Class Counsel as payment for all past and future attorneys' fees that have been or will be expended and for all costs incurred and that have or will be incurred in seeing this matter through Final Approval, securing the Final Order, and defending the settlement, including the conducting of any appellate action. Payment of attorneys' fees and costs pursuant to this section shall be paid from the Settlement Amount consistent with applicable legal precedent for wards of attorneys' fees under Rule 23.

## V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.    Settlement and Class Action Approval Process

"Federal courts naturally favor the settlement of class action litigation." *Isby*, 75 F.3d at 1196; *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (gathering cases). The traditional means for handling claims like those at issue here —

14

individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Class members, would be impracticable. The proposed Settlement therefore is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1)  Preliminary approval of the proposed settlement at an informal hearing;

(2)  Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)  A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Compl. Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by class action commentator Prof. Herbert Newberg, safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.*

With this Motion, Plaintiffs request that this Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.* at § 11.25 at 11-36, 11-37. The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement]

15

within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion).

The Court's grant of preliminary approval will allow all Class Members to receive Notice of the proposed Settlement's terms and of the date and time of the fairness hearing, at which Class Members may be heard regarding the Settlement, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented. *See Manual for Compl. Lit.*, at §§ 13.14, 21.632. Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *Id.* § 13.14.

**B.    The Criteria for Preliminary Settlement Approval Are Satisfied.**

**1.    The proposed Settlement offers a beneficial resolution to this litigation, thus warranting both this Court's preliminary approval and an opportunity for the Class Members to consider its terms.**

A proposed settlement may be approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, at 1276. In affirming the trial court's approval of the settlement in *City of Seattle*, the Ninth Circuit noted that it "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* at 1291 (internal quotation and citation omitted). The district court's ultimate determination "will involve a balancing of several factors" which may include:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel . . . and the reaction of the class members to the proposed settlement.
>
> *Id*.

As various courts have noted, "the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement" is viewed as the "most important factor relative to the fairness of a class action settlement." *Redman*, 2014 U.S. Dist. LEXIS 15880, at *9 In this case, Defendant has advanced various arguments that it believes are viable defenses to both liability and class certification and, at a minimum, has demonstrated that prevailing on the merits or even certifying a class is uncertain if this matter proceeds in the absence of a settlement. For example, Defendants have argued that they did, in fact, maintain accurate records of all time worked by Plaintiffs and the Class and that said records were validated by Plaintiffs and the Class. Defendants have argued that Plaintiffs and the Class were paid for all time worked reflected in Defendants' time records. Defendant also argued that Plaintiffs and similarly situated employees validated their weekly records of time worked via their signature each week. [6]

Given the uncertainty of whether the claims could be certified for class treatment, Defendants' defenses on the merits and the difficulties of proof, the terms of the Settlement Agreement compromising the class are fair and reasonable. Counsel for both Parties are experienced in class action litigation. The Parties negotiated a Class Settlement Fund which Plaintiffs' Counsel believes will provide Class Members who make a successful claim on the Class Settlement Fund with substantial monetary relief based on Plaintiffs' theory of liability. The average minimum payment to Class Members, assuming a participation rate by Class Members of 100%, is estimated at Two Thousand Seven Hundred and Ten ($2,710.00) Dollars

---

[6] Class Counsel does not joint Defendants in these defenses.

and No Cents. Given the potentially viable defenses asserted by Defendants, the recovery that Plaintiffs and Class Members will receive, approval of this settlement is warranted.

### 2. The Settlement Was Reached Through Arm's-Length Negotiations.

A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair. *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)(internal citation omitted). *See also Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair.")

The Settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of wage and hour violations in particular. The settlement was reached after approximately a year and a half of litigation and substantial formal as well informal discovery. In negotiating this settlement, Plaintiffs' counsel had the benefit of years of experience advocating the interests of low wage laborers combined with an in-depth familiarity with the facts of this case. In addition, Plaintiffs' Counsel have successfully litigated and resolved over 30 class actions involving low wage laborers. Similarly, Counsel for Defendants are experienced class action litigators.

Settlement negotiations in this case took place over the course of several months. After a period of extensive investigation, formal and informal discovery, frequent meetings and discussions between Class Counsel and the Named Plaintiffs, discussions between Class Counsel and Defendants' Counsel, the Parties reached agreement to resolve this litigation, the terms of which are reflected in the Stipulation of Settlement attached hereto as Attachment 1. Plaintiffs'

Counsel supports the resulting settlement as fair and as providing reasonable relief to the members of the class.

### 3.    The Settlement Provides Substantial Relief for Class Members

The Settlement provides relief for all Class Members. All Class Members who claim into the fund will be eligible to receive a substantial settlement award payment. The average minimum settlement award payment that Class Members are expected to receive is estimated at Two Thousand Seven Hundred and Ten ($2,710.00) and No Cents Dollars, while the largest settlement award payment that Class Members are expected to receive is Eleven Thousand Eight Hundred Ninety Nine Dollars and No Cents ($11,899.00).

While the Parties have created a strong notice mechanism in this matter, it remains likely that not all class members will claim timely return a valid claim form. In the event that the sum of Settlement Payments to Claimants, Administration Costs, attorneys' fees awards by the Court, and General Release Payments and Service Payments does not exceed the settlement amount any remaining funds shall be redistributed between Claimants on an pro rata basis.  Class members are therefore likely to receive a payment well above their estimate minimum payment and a significant portion of their alleged claim.

### 4.    Payments to the Named Plaintiffs are Appropriate and Reasonable.

The Named Plaintiffs shall receive a payments separate from the Class Settlement Fund as specified in Section VIII of the Settlement Agreement, as an enhancement award for their role in litigating this matter and for executing a general release. No other Class Member is being asked to execute a general release. However, for purposes of their claims for unpaid wages, the Named Plaintiffs' recovery will be equivalent to that of other Class Members as their settlement share will be calculated the exact same way as all other Class Members. As a result, the Named Plaintiffs are not receiving preferential treatment in the settlement of their unpaid wage claims.

### 5. Plaintiffs' Request for Fees and Costs is Fair and Reasonable

Section 14 of the Settlement Agreement provides that Plaintiffs' Counsel will receive approximately twenty three percent (23%) of the Settlement Amount (or $102,350.00), as approved by the Court, for all attorneys' fees and costs incurred and to be incurred in seeing this matter through Final Approval, including: (i) obtaining Preliminary Approval from the Court; (ii) responding to inquiries from and otherwise assisting Class Members regarding the Settlement; (iii) assisting in the review of claims submitted by Class Members; (iv) assisting in resolving any objections; and (v) defending the Settlement and securing the Final Order, including the conduct of any appellate action.

When the amount of the Settlement Amount in this case was negotiated, Defendants' offer was an "all in" global settlement offer, which included all aspects of the settlement consideration relief to the class, attorneys' fees, expenses, and costs. Such settlements, known as "common fund" settlements, are preferred by the law and fees are awarded from such settlement funds by the Court under "common fund" principles.

It is well settled under the "common fund" doctrine that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gement,* 444 U.S. 472, 478 (1980). The common fund doctrine permits plaintiffs' counsel to petition the court for fees out of a common fund created for the benefit of the plaintiff class. *Id.* The common fund doctrine is based on the idea that "those who have benefited from the litigation should share its costs." *Id.* at 563 (*citing Skelton v. General Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1989) (common fund principles "properly control a case which is initiated under a statute with a fee shifting provision, but is settled with the creation of a common fund"). Where a common fund is created in return

for release of a defendant's liability for damages and for statutory attorneys' fees, the district court's award of fees must be guided by equitable fund principles. *Skelton*, 860 F.2d at 256.

In 1984, the Supreme Court observed that, under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Since *Blum*, a majority of the circuits, including this Circuit, have affirmed that the percentage-of-the-fund method is available to the district court. *Blackburn v. Sundstrand Corp.*, 115 F.3d 493, 494 (7th Cir. 1997). "The common fund doctrine rests upon the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). When determining a reasonable fee in a class action settlement, courts in the Seventh Circuit typically use the percentage basis rather than a lodestar or other basis. *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998). In deciding fee levels in common fund cases, the Seventh Circuit has consistently directed district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007)(*quoting In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)). The normal rate of compensation in the market is one-third of the common fund recovered because the class action market commands contingency fee agreements and the class counsel accepts a substantial risk of nonpayment. *George v. Kraft Foods Global, Inc.*, 2012 U.S. Dist. LEXIS 166816, 7-9 (N.D. Ill. 2012). See also *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998)(The typical contingent fee is between 33 and 40 percent in common fund cases.) *See also Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. Ill. 2007)(vacating district court's decision to cap fees at 15% of multi-million dollar

common fund after finding court misapplied common fund doctrine in case involving fee-shifting statute); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7*th* Cir. 2001)(vacating district court's decision to cap fees at 10% of multi-million dollar common fund after finding court had failed to follow market-based approach).

The percentage-of-the-fund method is commonly used in awarding attorneys' fees in class action settlements of wage and hour cases bought under the IWPCA, and IMWL, by both federal and state court judges. In *Arrez v. Kelly Services, Inc.*, Case No. 07 C 1289, the court approved the IWPCA and IDTLSA classes and awarded class counsel, including Plaintiffs' Counsel in the instant matter, 30% of the $11,000,000.00 common fund. Indeed, courts around the country frequently award fees in common fund cases in the 30% to 50% range. *See* 18 Class Action Reports at 537 (1995).

The fee requested here, representing approximately twenty-three percent of the total Settlement Amount is less than the typical of amounts of awards made and fees negotiated in the Chicago area.

**VI.    CONCLUSION**

For the foregoing reasons, the Parties request that the Court: (i) grant this Motion for Preliminary Approval of the Stipulation of Settlement; (ii) approve class certification of the class identified herein; (iii) approve the Notice of Class Action, Proposed Settlement and Hearing; (iv) authorize notice to the Class; (v) set a date for the Fairness Hearing; (vi) enter the Proposed Order of Preliminary Approval attached hereto as Exhibit F to Attachment 1; and (vii) grant all further relief deemed just and proper.

Respectfully submitted,

Dated: August 22, 2016

s/Alvar Ayala

Alvar Ayala
Christopher J. Williams
Workers' Law Office, PC
53 W. Jackson Blvd., Suite 701
Chicago, Illinois 60604
(312) 795-9121

Attorneys for Plaintiffs